IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PAULA VAIL,                          )
                                     )
            Plaintiff,               )         Civil No. 06-6159-AA
                                     )         OPINION AND ORDER
        vs.                          )
                                     )
T-MOBILE USA, INC., a                )
Delaware Corporation; ARRIVE         )
STAFFING RESOURCES, INC., an         )
Oregon Corporation, and              )
WILSHIRE CREDIT CORPORATION,         )
a Nevada Corporation,                )
                                     )
            Defendants.              )
─────────────────────────────────────)

Dana L. Sullivan
Bishop Joffe Sullivan, LLP
1635 NW Johnson St.
Portland, OR 97209
      Attorney for Plaintiff

Paula A. Barran
Todd A. Hanchett
Craig L. Leis
Barran Liebman, LLP
601 SW Second Ave., Suite 2300
Portland, OR 97204
      Attorneys for Defendant T-Mobile USA, Inc.

Page 1 - OPINION AND ORDER

AIKEN, Judge:

In this employment discrimination suit, plaintiff Paula Vail brings an action against her former employer, defendant T-Mobile USA.[1]  Plaintiff alleges employment discrimination in the form of a hostile work environment, disparate treatment, retaliation, and discrimination for initiating a civil proceeding, in violation of Oregon law, as well as retaliation in violation of federal law. Plaintiff also states a claim against defendant for intentional interference with economic relations and unpaid wages.  The case is before this court on defendant's motion for summary judgment. The court heard oral argument on October 22, 2007.  Defendant's motion for summary judgment, as well as the motion to strike, are denied.

## Background

Plaintiff was born in Turkey and emigrated to the United States when she was two years old, although her family is originally from Russia.  Members of plaintiff's family, including her daughter, dress in traditional "peasant-style" clothing and observe the numerous Russian Orthodox holidays.  Plaintiff does not strictly adhere to all of the traditional customs and does not wear conventional Russian attire.

Plaintiff began working for defendant in August 2003.

---

[1]Defendant T-Mobile USA is the only defendant remaining in this lawsuit.

Plaintiff alleges that her supervisor, Karen Lang, observed plaintiff's daughter dressed in traditional Russian clothing, and thereafter, Ms. Lang began questioning plaintiff about being Russian and making comments alluding to her Russian background. Plaintiff also alleges that other employees reported to her that Ms. Lang had made derogatory statements about plaintiff, some of which referenced plaintiff's Russian heritage.

Plaintiff argues that the questions and comments regarding her Russian heritage triggered a broader pattern of unlawful national origin discrimination by defendant. As part of this broader pattern, plaintiff alleges that she was singled out because of her national origin, criticized and disciplined more harshly than her co-workers, and labeled a "troublemaker" for bringing the alleged discrimination to the attention of the Human Resources department. Plaintiff contends that this pattern of discrimination based on plaintiff's national origin culminated in her discharge.

Approximately two years after plaintiff was discharged from T-Mobile, she obtained a "temp-to-hire" position with Wilshire Credit Corporation. One of the managers at Wilshire, Joni Keith, was a former T-Mobile employee. Ms. Keith remained in contact with T-Mobile employees after leaving to work at Wilshire. Plaintiff alleges that Wilshire personnel praised her initial performance, however after four days of training Wilshire

terminated plaintiff's employment.  Plaintiff alleges that the
Wilshire manager who discharged plaintiff told her that Ms. Keith
had spoken with a friend and T-Mobile employee who told Ms. Keith
that T-Mobile had "blackballed" plaintiff and "slandered"
plaintiff's name.

Standards

Summary judgment is appropriate "if the pleadings,
depositions, answers to interrogatories, and admissions on file,
together with the affidavits, if any, show that there is no
genuine issue as to any material fact and that the moving party
is entitled to a judgment as a matter of law."  Fed. R. Civ. P.
56(c).  Substantive law on an issue determines the materiality of
a fact.  T.W. Electrical Service, Inc. v. Pacific Electrical
Contractors Assoc., 809 F.2d 626, 630 (9th Cir. 1987).  Whether
the evidence is such that a reasonable jury could return a
verdict for the nonmoving party determines the authenticity of a
dispute.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248
(1986).

The moving party has the burden of establishing the absence
of a genuine issue of material fact.  Celotex Corp. v. Catrett,
477 U.S. 317, 323 (1986).  If the moving party shows the absence
of a genuine issue of material fact, the nonmoving party must go
beyond the pleadings and identify facts which show a genuine
issue for trial.  Id. at 324.

Special rules of construction apply when evaluating summary judgment motions: (1) all reasonable doubts as to the existence of genuine issues of material fact should be resolved against the moving party; and (2) all inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. T.W. Electrical, 809 F.2d at 630.

## Discussion

### A. Statute of Limitations

Defendant argues that plaintiff's national origin discrimination and retaliation claims are barred by the statute of limitations. Specifically, defendant alleges that plaintiff's complaint with the Bureau of Industry and Labor (BOLI) was untimely filed, and thus, fails to satisfy the statute of limitations under Oregon law. Oregon law requires a party alleging unlawful employment discrimination to commence a civil action within one year after the occurrence of the unlawful practice, unless a complaint is timely filed with BOLI. Or. Rev. Stat. § 659A.875(1)(2005). A complaint must be filed with BOLI no later than one year after the alleged unlawful practice. Id. at § 659A.820(1). Thus, a court must determine: (1) when the statute of limitations began to run, and (2) whether plaintiff's complaint was timely filed.

Defendant argues that the statute of limitations clock started on the date of the last alleged occurrence of

discriminatory practice, or February 29, 2004.  Conversely,

plaintiff alleges that due to her national origin, defendant

subjected her to a hostile work environment, disparate treatment,

and retaliation that culminated in plaintiff's discharge.

Plaintiff argues that her discharge is part of a broader pattern

of discrimination, and as such, should be included in the

calculation determining when the statute of limitations began to

run.

The Supreme Court distinguished hostile work environment

claims from those based on discrete discriminatory acts, because

"the very nature of a hostile environment claim 'involves

repeated conduct' and 'cannot be said to occur on any particular

day.'"  Reyna v. City of Portland, 2005 WL 708344 (D.Or. March

28, 2005)(quoting Natl. R.R. Passenger Corp. v. Morgan, 536 US.

101, 116-17 (2002)).  Accordingly, the Supreme Court held if an

act contributing to a hostile work environment occurs within the

filing period, the entire time period of the hostile environment

may be considered for the purposes of determining liability.

Morgan, 536 U.S. at 116-17.

Here, plaintiff alleges that her termination is directly

attributable to her disparate treatment within a hostile work

environment.  Viewing the facts in the light most favorable to

the nonmoving party, I find that plaintiff's discharge may be

viewed as a contributing act in the overall alleged

discriminatory practice carried out by defendant.

Alternatively, defendant argues that if plaintiff's discharge is considered part of defendant's alleged discriminatory practices, the statute of limitations should begin to run when plaintiff's discharge became *effective*. Defendant filed a "Request for Termination Form" regarding plaintiff's employment on March 5, 2004, and according to defendant's "Separation Form," plaintiff's employment was formally terminated on March 8, 2004. However, beginning on March 4, plaintiff was placed on paid suspension pending an investigation of her work activities, and she was not notified of her discharge until the following week.

Under Oregon law, a discharge occurs when the employment relationship between the employee and the employer ends. <u>Stupek v. Wyle Laboratories Corporation</u>, 327 Or. 433, 963 P.2d 678 (1998). In <u>Stupek</u>, plaintiff brought suit against her employer for wrongful discharge and statutory sex discrimination. <u>Id.</u> at 679. For purposes of calculating the statute of limitations, the Oregon Supreme Court held that a discharge did not occur until the employee left the employment, and therefore plaintiff's claim did not accrue until the employment relationship had "conclusively ended." <u>Id.</u> at 682.

Here, plaintiff was on paid suspension and was not notified of her termination until the following week. During the period

of plaintiff's suspension, she could not have known that defendant had terminated her employment until she was given actual notice of the termination; therefore, she remained in the defendant's employ and had not "left the employment." Therefore, the relationship between employee and employer cannot have "conclusively ended" until plaintiff was given notice of her termination. The court finds that the statute of limitations began to run on the date of plaintiff's discharge, or more specifically, the date on which plaintiff was notified of her discharge.

However, the court notes a factual dispute regarding the actual date that defendant notified plaintiff of her termination. In plaintiff's BOLI complaint, she states that defendant discharged her on March 11, 2004. Plaintiff declares that "[l]ooking at a calendar for March 2004 and seeing that March 11 was a Thursday refreshes my recollection that this conversation took place on Thursday, March 11." Plaintiff's declaration filed in opposition to defendant's summary judgment motion is intended to correct plaintiff's deposition testimony, in which she was asked when the termination conversation occurred and plaintiff replied, "I'm pretty – Wednesday, maybe - Tuesday or Wednesday."

Defendant contends that the conversation in which plaintiff's team manager told plaintiff that her employment was terminated took place on Tuesday, March 9th. The team manager

recalls that the conversation occurred on March 9th, and he supports his recollection with an electronic log detailing the conversation in an entry dated March 9th.

Having determined that the statute of limitations began to run on the date plaintiff was notified of her termination, plaintiff's BOLI complaint must have been filed no later than one year after the date of that conversation. Plaintiff filed her BOLI complaint on March 11, 2005. Thus, if the conversation took place on Thursday, March 11th, as plaintiff states in her declaration, her claims are not barred by the statute of limitations; if however the conversation took place on Tuesday, March 9th, as plaintiff stated in her deposition and defendant supports with the team manager's testimony, then plaintiff's claims are barred by the statute of limitations.

Plaintiff's declaration contradicts her earlier deposition testimony, and raises an issue of material fact. The Ninth Circuit holds that a party cannot create an issue of fact with an affidavit contradicting prior deposition testimony. <u>Foster v. Arcata Associates, Inc.</u>, 772 F.2d 1453, 1462 (9th Cir. 1985). Nevertheless, the Ninth Circuit emphasizes that the non-moving party is not precluded from elaborating upon, explaining, or clarifying prior deposition testimony: "minor inconsistencies that result from an honest discrepancy, a mistake, or newly discovered evidence afford no basis for excluding an opposition

affidavit."  Messick v. Horizon Indus., Inc., 62 F.3d 1227 (9th

Cir. 1995).  It is the role of the court to make a factual

determination whether the contradictory testimony was submitted

in an attempt to "create" an issue of fact and thus avoid summary

judgment.  Kennedy v. Allied Mut. Ins. Co., 952 F.2d 262, 266

(9th Cir. 1991).

Here, plaintiff's original testimony reflects uncertainty

about the date on which she was discharged, and her declaration

offers a plausible explanation for her inability to recall the

specific date.  The date correction in her declaration

constitutes a clarification of a minor inconsistency resulting

from an honest discrepancy or mistake.  Because the court finds

that a genuine disputed issue of fact exists regarding the date

of the conversation providing plaintiff notice of her

termination, the court will consider plaintiff's arguments on the

merits.

B.  Plaintiff's Claims for Relief

Defendant moves for summary judgment on each of plaintiff's

seven claims for relief.

(1) Hostile Work Environment

Plaintiff alleges that defendant discriminated against her

based on her national origin, subjecting plaintiff to a hostile

work environment in violation of ORS §§ 659A.030(1)(a)-(b).  In

order to prevail on a hostile work environment claim, plaintiff

must show: (1) she was subjected to verbal or physical conduct due to her membership in a protected class; (2) the conduct was unwelcome; and (3) the conduct was sufficiently severe or pervasive to alter the conditions of plaintiff's employment and create an abusive work environment. Fuller v. City of Oakland, 47 F.3d 1522, 1527 (9th Cir. 1995).[2] When determining whether a work environment is hostile, a court considers all of the circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Harris v. Forklift Sys., Inc., 510 U.S. 17, 23 (1993). To survive summary judgment on a hostile work environment claim, plaintiff must establish a genuine issue of material fact on whether her workplace was both objectively and subjectively hostile and whether the employer failed to take adequate remedial and disciplinary action. Steiner v. Showboat Operating Co., 25 F.3d 1459, 1462-63 (9th Cir. 1994).

Defendant moves for summary judgment on the hostile work environment claim on the basis that facts in the record cannot

_____

[2] Federal case law used to interpret Title VII may also be used to interpret Or. Rev. Stat. § 659A.030 because the Oregon statute was modeled after Title VII and the statutory schemes are similar. Scott v. Sears, Roebuck, & Co., 395 F.Supp.2d 961, 980 n. 7 (D. Or. 2005).

demonstrate: (1) she was subjected to hostile conduct due to her national origin; and (2) severity sufficient to constitute a hostile work environment.  The court disagrees.

First, plaintiff has provided evidence that the alleged discrimination was sufficiently connected to her national origin. Many of the derogatory comments alleged to be directed at plaintiff by her supervisor referenced plaintiff's Russian heritage.  For example, plaintiff alleges that her supervisor complained to her that the Mexicans and the Russians had overtaken the community and were dealing drugs; co-workers disclosed to plaintiff that the supervisor called plaintiff a "Russian commie whore"; and the supervisor allegedly reported having seen plaintiff "panhandling while wearing Russian clothing."

Second, plaintiff has presented evidence that the severity of defendant's conduct was sufficient to create an abusive environment that altered the conditions of plaintiff's employment.  Plaintiff has alleged that her supervisor made repeated comments about plaintiff's Russian heritage; told plaintiff that she was a "troublemaker" when plaintiff complained about her supervisor's conduct; and used physically aggressive body language while plaintiff spoke to customers on the phone. When plaintiff attempted to transfer to a different team, her supervisor blocked the transfer.  When plaintiff complained to a

human resources specialist, she was told to "hang in there," but plaintiff alleges that her work environment continued to deteriorate to the point that her health was negatively impacted. Viewing the facts in the light most favorable to plaintiff, the court finds that plaintiff has raised a genuine issue of material fact as to whether defendant subjected plaintiff to a hostile work environment. Defendant's summary judgment motion on this claim is denied.

Defendant further argues that a hostile work environment claim is barred because defendant exercised reasonable care to prevent and correct any harassing behavior and plaintiff failed to take advantage of those corrective opportunities. This affirmative defense, however, is available to employers only when no tangible employment action is taken. See Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 765 (1998). Here, plaintiff was ultimately discharged from her position. The court has found that, viewed in the light most favorable to plaintiff, plaintiff's termination may be perceived as part of a larger pattern of discrimination based on her national origin. Therefore, defendant is barred at this time from asserting this affirmative defense.

(2) Disparate Treatment

Plaintiff contends that defendant discriminated against her based upon her national origin, constituting disparate treatment

in violation of Oregon law.  In order to establish a *prima facie*
case of disparate treatment discrimination, a plaintiff must show
that: (1) she belongs to a protected class; (2) she was
performing her position in a satisfactory manner; (3) she was
subjected to an adverse employment action; and (4) similarly
situated persons outside her protected class were treated more
favorably or her position was filled by a person outside her
protected class.  <u>Aragon v. Republic Silver State Disposal, Inc.</u>,
292 F.3d 654, 658 (9th Cir. 2002) (en banc) (internal citation
omitted).[3]  "The requisite degree of proof necessary to establish
a prima facie case for Title VII ... on summary judgment is
*minimal* and does not even need to rise to the level of a
preponderance of the evidence."  <u>Id.</u> at 659 (internal citation
omitted, emphasis in original).

Defendant asserts that plaintiff cannot establish a *prima
facie* case of disparate treatment because she has failed to
provide evidence that: (1) she was satisfactorily performing her
job; and (2) non-Russian employees were treated more favorably.

---

[3]  Oregon courts have rejected the burden shifting formula
of <u>McDonnell Douglas</u>.  <u>Callan v. Confed. of Ore. Sch. Admin.</u>, 79
Or. App. 73, 78 n3, 717 P.2d 1252 (1986)(<u>see</u> <u>McDonnell Douglas
Corp. v. Green</u>, 411 U.S. 792 (1973)).  However, Oregon courts
acknowledge that the requirements for a *prima facie* case of
discrimination under federal law also applies to state law
claims.  <u>See, e.g.,</u> <u>Henderson v. Jantzen</u>, 79 Or. App. 654, 658,
719 P.2d 1322 (1986)(citing <u>Texas Dept. of Comm. Affairs v.
Burdine</u>, 450 U.S. 248, 253 (1981)).

First, defendant maintains that plaintiff engaged in misconduct by dropping customer calls, transferring customer calls to inappropriate departments within T-Mobile, and failing to make required notations in customer accounts.  Second, defendant provides evidence that numerous other non-Russian employees had been terminated for engaging in the same type of misconduct allegedly committed by plaintiff.  Additionally, other non-Russian employees submitted complaints regarding Ms. Lang's conduct as a supervisor; while defendant acknowledges that perhaps Ms. Lang's conduct was at times inappropriate, it was not directed exclusively at plaintiff.

Plaintiff declares that upon her return from leave she did not disconnect customers, improperly transfer callers, nor fail to make required notations in customer accounts.  Rather, plaintiff maintains that following her transfer to a team under a different supervisor, plaintiff received positive feedback from her supervisors.  Specifically, in an internal T-Mobile evaluation form completed on March 3rd, the day before plaintiff's suspension, plaintiff's new supervisor praised plaintiff's performance.

Nonetheless, on the same day that plaintiff received positive feedback, the team manager requested a "trace report" on plaintiff's call handling.  Plaintiff was the only employee for whom the team manager ordered a trace report at that time.

Plaintiff alleges that the team manager ordered the trace report because defendant had targeted plaintiff as a "troublemaker" for opposing defendant's discriminatory treatment.  Plaintiff argues that the trace report was inconclusive, and provides evidence that supervisors generally conduct trace reports over a period of at least one week, rather than two days as in plaintiff's case. At his deposition, the team manager testified that based on plaintiff's trace report, he was unable to determine whether her call handling constituted misconduct.  Nevertheless, this report was used by the team manager to justify plaintiff's suspension and eventual termination.

Plaintiff here has provided sufficient evidence to meet the "minimal proof" standard necessary to establish a *prima facie* case of disparate treatment on a motion for summary judgment. Therefore, defendant's motion for summary judgment is denied.

(3) Retaliation in Violation of Federal Law and Oregon Law

Plaintiff alleges that defendant retaliated against her for objecting to discriminatory treatment based upon her national origin and for filing an administrative complaint in that regard, in violation of 42 U.S.C. § 1981.  Defendant moves for summary judgment on plaintiff's § 1981 claim, asserting that claims of discrimination based on national origin do not fall within the bounds of § 1981.  The court disagrees and declines to so narrowly construe the meaning of race under § 1981.

To establish liability under § 1981 plaintiff must prove
that he or she was subjected to intentional discrimination based
upon his or her race or ethnic characteristics.  See Saint
Francis College v. Al-Khazraji, 481 U.S. 604, 612-13 (1987).
Although § 1981 specifically prohibits discrimination based on
"race," the contention that actionable race discrimination must
be based on physical or genetically determined characteristics
such as skin color ignores the broad reach of § 1981.[4]  El-Hakem
v. BJY Inc., 415 F.3d 1068, 1073 (9th Cir. 2005)(internal
quotations omitted).  Instead, § 1981 was intended to protect
identifiable classes of persons who are subjected to intentional
discrimination solely because of their ancestry or ethnic
characteristics.  Saint Francis College, 481 U.S. at 613.  As the
Ninth Circuit observes, a group's ethnic characteristics
encompass more than its members' skin color and physical traits.
El-Hakem, 415 F.3d at 1073.  For example, this court ruled that a
claim for race discrimination under § 1981 may be brought based
upon plaintiff's Italian ancestry.  Bertoli v. Cascade Precision,
Inc., 2004 WL 948795 (D.Or. April 14, 2004).

Here, plaintiff brings a claim alleging unlawful retaliation
based upon her Russian ancestry, in violation of § 1981 and Or.

---

[4] This case is distinguishable from Johnson v. Telew, 2007
WL 414346 (D. Or. Feb. 2, 2007) based on plaintiff's allegations
and the facts at issue here.

Rev. Stat. § 659A.230.  When analyzing a retaliation claim under § 1981, the court applies the same standard used by courts in considering claims under Title VII.  Hardy v. USF Reddaway, Inc., 2004 WL 1173137 (D.Or. May 21, 2004).  To state a *prima facie* case of retaliation under Title VII, plaintiff must provide evidence that: (1) she engaged in a protected activity; (2) she suffered an adverse employment action; and (3) there was a causal link between her activity and the employment decision.  Hashimoto v. Dalton, 118 F.3d 671, 679 (9th Cir. 1997).  Protected activity includes the filing of a charge or complaint, or providing testimony regarding an employer's alleged unlawful practices, as well as engaging in other activity intended to oppose an employer's discriminatory practices.  42 U.S.C. § 2000(e)(3)(a).

Defendant contends that plaintiff fails to state a *prima facie* case of retaliation because plaintiff is unable to show a causal link between her protected activity and an adverse employment action.  Instead, defendant argues, plaintiff relies on conjecture and inadmissible hearsay to support her claim.

Plaintiff, however, alleges that she was hired by Wilshire Credit Corporation, received a few days of training with positive reviews, and then was summarily fired after being "blackballed" by T-Mobile.  To show a causal link, plaintiff declares that the Wilshire supervisor who terminated her revealed to her that T-Mobile was "blackballing" plaintiff and "slandering" her name to

ensure that she never worked in another call center. The manager at Wilshire who allegedly ordered plaintiff's termination, Ms. Keith, had previously been employed at T-Mobile, has remained friends with T-Mobile employees including those implicated by this lawsuit, and was contacted by T-Mobile's Human Resources Director regarding a pending legal action against T-Mobile (although Ms. Keith couldn't recall at her deposition who the plaintiff was in the legal action against T-Mobile).

The court denies defendant's motion for summary judgment on plaintiff's § 1981 and Or. Rev. Stat. § 659A.230 claims, as plaintiff has brought an actionable claim under § 1981 based on national origin and has shown sufficient disputed issues of fact to require submission to a jury.

(4) <u>Discrimination for Initiating a Civil Proceeding</u>

Under Oregon law, it is unlawful for an employer to discriminate or retaliate in any manner against an employee because that employee has in good faith filed a complaint or brought a civil proceeding against an employer. Or. Rev. Stat. § 659A.230 (2003). The facts and allegations underlying plaintiff's discrimination for initiating a civil proceeding claim are the same as those underlying plaintiff's retaliation claim. For the reasons outlined above, the court concludes that plaintiff has raised a genuine issue of material fact regarding whether defendant's conduct constitutes discrimination for

initiating a civil proceeding in violation of Oregon law.
Therefore, defendant's motion for summary judgment is denied.

(5) <u>Intentional Interference With Economic Relations</u>

To establish a claim for intentional interference with economic relations, plaintiff must prove: (1) the existence of a professional or business relationship; (2) intentional interference with that relationship; (3) by a third party; (4) accomplished through improper means or for an improper purpose; (5) a causal effect between the interference and the harm to the relationship; and (6) damages. <u>McGanty v. Staudenraus</u>, 321 Or. 532, 535, 901 P.2d 841 (1995)(internal citations omitted).

Plaintiff has raised a genuine issue of material fact regarding whether representatives of T-Mobile communicated with former colleagues who were in upper-level management positions at Wilshire, and this communication then caused Wilshire to terminate plaintiff's employment.

Viewing the facts in the light most favorable to plaintiff, a reasonable juror could conclude that defendant intentionally interfered with economic relations. Plaintiff provides evidence of: (1) the existence of a business relationship between plaintiff and Wilshire; (2) intentional interference with that relationship in the form of communications between a Wilshire manager and employees at T-Mobile; (3) by a third party, that is, T-Mobile employees, including a Human Resources representative;

(4) accomplished for an improper purpose, allegedly to "blackball" plaintiff from working in a call center; (5) a causal effect between the interference and the harm to the relationship, as plaintiff received positive reviews until the manager learned of plaintiff's history at T-Mobile and plaintiff was discharged soon thereafter; and (6) damages in the form of economic and noneconomic harm.  Therefore, defendant's motion for summary judgment on plaintiff's claim of intentional interference with economic relations is denied.

(6) Unpaid Compensation

Plaintiff alleges that at the time of her discharge, defendant failed to pay her due compensation.  Upon discharge of an employee, an employer must pay all wages earned and unpaid at the time of discharge "not later than the end of the first business day after the discharge."  Or. Rev. Stat. § 652.140(2). If an employer willfully fails to pay those wages upon discharge within the statutory time frame, the employee may seek compensation at his or her hourly rate until the compensation is paid by the employer, for up to 30 days.  Or. Rev. Stat. § 652.150(1).  When an employer intentionally withholds wages payable to an employee there need be no showing of bad faith. Sabin v. Willamette-Western Corp., 276 Or. 1083, 1093, 557 P.2d 1344 (1976) (quoting State ex rel. Nilsen v. Johnston et ux, 233 Or. 103, 108, 377 P.2d 331 (1962)).

Defendant argues that plaintiff has failed to provide evidence that she is owed unpaid wages, and her testimony regarding her wage claim is inconsistent and contradictory. Plaintiff's interrogatory response states she was owed $276.00 in unpaid vacation time. Plaintiff's deposition states she was owed approximately $700.00. Finally, plaintiff's declaration asserts she is owed wages for two 5-hour shifts she worked in February 2004. Defendant provides internal time sheets alleging that plaintiff was owed for 66 hours of work, but defendant paid plaintiff for 72 hours of work, resulting in an overpayment of six hours.

Plaintiff alleges that she was not paid for time she was on leave from January 17 to 21, 2004. When plaintiff's Family and Medical Leave Act application was denied for this time period, defendant should have paid plaintiff with accrued sick leave. Plaintiff was also not paid for hours that she worked at the call center. Plaintiff notified defendant following her termination that she was owed wages, and in August 2004, defendant determined that plaintiff was owed pay for thirty-three hours of work. Defendant issued plaintiff a check in September 2004 for unpaid wages in the amount of $386.43. However, plaintiff alleges that because the evidence supports a conclusion that defendant withheld wages, plaintiff is entitled to the statutory penalty and attorneys fees associated with defendant's willful failure to

comply within the statutory period.

Plaintiff further alleges that defendant still owes plaintiff compensation for hours worked. On February 5 and 6, 2004, plaintiff worked five-hour shifts for which her supervisor willfully refused to pay plaintiff. Plaintiff contends that she is entitled to ten hours of unpaid wages, as well as the accompanying statutory penalty and attorneys fees.

While defendant's time sheets provide the court with a log of hours worked by plaintiff, the time sheets are not accompanied by proof that defendant actually paid plaintiff for those hours. Therefore, disputed issues of fact exist regarding the amount plaintiff is owed, if any, and consequently whether defendant qualifies for the statutory penalty. Defendant's motion for summary judgment on this claim is denied.

C. Defendant's Affirmative Defense

Defendant argues that even if plaintiff prevails at trial, her damages should be limited. Defendant alleges it discovered evidence that provides an independent basis for plaintiff's termination, had she not already been terminated for valid reasons. The court declines to consider this issue at this time, however, it reserves the right to address this issue at the pretrial conference.

Conclusion

Defendant's motion for summary judgment (doc. 56) is denied

and defendant's motion to strike (doc. 94) is denied as moot.

IT IS SO ORDERED.

Dated this  29  day of October 2007.


                        _____/s/ Ann Aiken_____
                              Ann Aiken
                        United States District Judge